FILED
CLERK, U.S. DISTRICT COURT

DEC 24 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1  Tamu Blackwell
2  355 South Grand Avenue
   Suite 2450
   Los Angeles, CA 90071
3  tcb2527@gmail.com
4  Plaintiff in *Pro Se*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMU BLACKWELL,<br><br>             Plaintiff<br><br>vs.<br><br>CITY OF LOS ANGELES, a governmental entity, Los Angeles Police Department Officers MARTINEZ, ACEVES, CARLOS MALDONADO and ROBERT MALDONADO, and Sgt. NORWOOD, in their individual capacities, and DOES 1 THROUGH 10, inclusive,<br><br>             Defendants. | CASE NO. 19-CV-09977-CJS-CJC<br><br>**PLAINTIFF'S THIRD AMENDED COMPLAINT FOR VIOLATION OF HER FEDERAL CIVIL RIGHTS AND SUPPLEMENTAL STATE LAW CLAIM**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. The claims herein are asserted pursuant to the United States Constitution and 42 U.S.C. § 1983, <u>et seq.</u>, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

2. The acts complained of arose in this district and division, and therefore venue lies in this district and division pursuant to 28 U.S.C. § 1391.

---

1

THIRD AMENDED COMPLAINT

## PARTIES

3. The party who makes this Complaint was within the jurisdiction of the United States of America at all times alleged herein.

4. Plaintiff TAMU BLACKWELL is a 67-year-old African-American woman who lives in an apartment located in the City of Los Angeles and owned by the McCarty Memorial Christian Church. She has lived there for over 29 years, since October of 1991.

5. All defendants are either California peace officers or California governmental entities or others whose identities are presently unknown to plaintiff. Defendants MARTINEZ, ACEVES, CARLOS MALDONADO, ROBERT MALDONADO and NORWOOD were at all times relevant to this complaint employed as law enforcement officers for the Los Angeles Police Department. Defendant CITY OF LOS ANGELES is believed to be and thereon alleged to be a municipal corporation and a local public entity responsible for the misconduct of its employees, including employees of defendant CITY OF LOS ANGELES' Police Department. Individual law enforcement defendants are hereinafter referred to by their names and/or their titles (officers, sergeants, law enforcement officers, etc.), and any governmental entity defendants are referred to by proper name or as governmental entity.

6. The defendants whose identities are unknown are sued herein under the names DOES 1 through 10 (DOES). Plaintiff alleges only 10 DOES because local court rules so restrict the number of DOES a plaintiff may allege (see L.R. 19-1). However, plaintiff is informed and believes and thereon alleges that there may be more than 10 DOE defendants who are in some way responsible for the damages caused to plaintiff as set forth below and hence, plaintiff reserves all of her rights to seek redress against each and every person or entity, however many such DOE defendants there are, that is/are responsible for causing plaintiff to suffer the damages alleged below.

7. The identities of the defendant DOES 1 through 10 are unknown to plaintiff. Plaintiff therefore sues defendant DOES 1 through 10 as fictitiously-named

defendants. Plaintiff is informed and believes and thereon alleges that all DOES, 1 through 10, are responsible in some manner for the occurrences alleged herein and that plaintiff's damages as alleged herein were proximately caused by such occurrences. Accordingly, wherever "defendants," "officers," "sergeant," a municipal entity or other similar term is used in this pleading to refer to a defendant, such term is intended to include all DOE defendants. Plaintiff will ask leave of this Court to amend this complaint to set forth the true names and capacities of said DOE defendants when they have been ascertained.

## FACTS AND ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

8. Plaintiff is informed and believes and thereon alleges that each defendant was the agent and employee of each other defendant and was at all times acting within the scope of such agency, and that each defendant is responsible in some manner or respect, as alleged below, for plaintiff's injuries and the damages caused to her.

9. Each and every allegation set forth in each and every averment of this complaint is hereby incorporated by this reference in each and every other averment and allegation of the complaint.

10. Plaintiff was deprived of, *inter alia*, interests protected by the Constitution or laws of the United States as well as the Constitution or laws of the State of California, and defendants caused any such deprivation(s) while acting in the course and scope of their employment and under color of state law.

11. Except as otherwise stated, all acts or omissions alleged to have been engaged in by any defendant are alleged to have been engaged in with evil motive and intent, and in callous, reckless, and wanton disregard of plaintiff's rights.

12. As set forth above, at all times relevant to this complaint and since October of 1991, plaintiff has lived -- and still does live -- at the McCarty Memorial Christian Church (MMCC) apartments located at 2527 11th Avenue in the City of Los Angeles. The MMCC sanctuary and education buildings are located elsewhere on West Adams

Blvd., but it has owned and been responsible for the building located at 2527 11th Avenue ever since plaintiff has lived there.

13. In June of 2017, plaintiff received notices from MMCC, her landlord, informing her that it intended to sell the building in which she resided and that she would have to move out within 60 days.

14. Plaintiff, at that time, had lived at the location for nearly 25 years. In order to ensure that she was being afforded all rights and process due her as a tenant, and as a possible resource for emergency housing in the event she had to move out, plaintiff contacted and sought assistance from the Los Angeles Housing and Community Investment Department (HCIDLA). HCIDLA referred plaintiff, in addition, to the Los Angeles Department of Building and Safety (LADBS).

15. LADBS and HCIDLA conducted an investigation and determined that, at some point in time (necessarily prior to when plaintiff's tenancy commenced), MMCC had unlawfully and without permission converted what had been a permitted single-family residence into an unpermitted two-unit dwelling. And it was into one of those two units that plaintiff moved in October of 1991, having no knowledge that MMCC had improperly and unlawfully converted or altered it. LADBS also determined that MMCC's unlawful and unpermitted conversion subjected the property to the City of Los Angeles' Rent Stabilization Ordinance (LARSO) which provided for certain tenant protections.

16. Having determined that MMCC unlawfully converted and made alterations to the dwelling in which plaintiff was living, LADBS informed MMCC that it was required to immediately obtain proper permitting for it as a two-unit apartment rather than a single-family residence. In addition, HCIDLA informed MMCC that it should rescind its notice to plaintiff to vacate because it was in violation of the LARSO; that, for the time being and until remedied, MMCC was not permitted to collect rent from plaintiff because the unit was not properly and legally permitted; and that under controlling law, if MMCC sought to evict plaintiff, it was required by the LARSO, before any

eviction, to pay plaintiff (over twenty-thousand dollars for) relocation assistance.

17. On August 14, 2017, MMCC rescinded the notice to vacate it had issued plaintiff, but it did not obtain permitting for the building as it had been ordered to do. Nevertheless, plaintiff mistakenly continued to pay her monthly rent of $900 to MMCC for August and September of 2017.

18. Starting in October of 2017, plaintiff declined to pay rent to MMCC and requested that MMCC refund her for the August and September rent she had paid in error. She also requested from MMCC that it pay her the relocation assistance money she was entitled to under the law if it was forcing her to move. MMCC refused to refund plaintiff anything and refused to pay her any relocation assistance. Further, MMCC claimed plaintiff was in breach of her lease for not paying her October rent and, on November 1, 2017, MMCC filed an unlawful detainer action against plaintiff seeking to evict her.

19. During November of 2017, after filing its unlawful detainer against plaintiff, MMCC personnel spoke with plaintiff about the situation. Basically, MMCC personnel told plaintiff that they believed that if MMCC were able to remove plaintiff's kitchen sink, the property would then be in compliance with all applicable laws, would revert to being a single dwelling unit, no longer subject to the LARSO, and as such, MMCC would not be required to abide by LARSO rules or pay plaintiff relocation assistance. Plaintiff told MMCC personnel that she disagreed with them about virtually everything and that she was not going to permit MMCC to remove her kitchen sink.

20. Plaintiff is informed and believes and thereon alleges that MMCC's unlawful detainer action against her was without merit and that MMCC filed it and litigated it to harass her. In April of 2018, without ever obtaining any of the relief it sought, MMCC requested the dismissal of its unlawful detainer action against plaintiff and it was, in fact, dismissed.

///

## DEFENDANTS' UNLAWFUL AND UNREASONABLE SEARCHES & SEIZURES

21. On November 30, 2017, Los Angeles Police Department officers Simmons and Kopacek came to plaintiff's apartment. MMCC personnel accompanied them. Initially, the officers requested that plaintiff allow MMCC personnel and others to enter plaintiff's apartment so they could remove her kitchen sink and/or do other alterations. Plaintiff refused. She explained to the officers that there was a then-pending unlawful detainer action that MMCC had filed against her and that they were not allowed to enter her unit without a warrant or some other lawful authority. The officers, however, did not have any type of warrant or any other lawful basis to make entry: plaintiff did not consent -- indeed she objected to their entry; there was no emergency; plaintiff hadn't moved out; and there were no repairs that had to promptly be made, or that had been agreed-to by plaintiff.

22. Eventually defendant Sgt. NORWOOD arrived at the location. Plaintiff is informed and believes and thereon alleges that defendant Sgt. NORWOOD was a supervisor of officers Simmons and Kopacek. After she spoke with the officers and MMCC personnel, defendant Sgt. NORWOOD addressed plaintiff, telling her that she (NORWOOD) had given permission to MMCC and the others to enter and occupy plaintiff's apartment over plaintiff's objection. Defendant Sgt. NORWOOD told plaintiff that if she interfered in any way with their entry or work while they were inside, she would be arrested. Then defendant Sgt. NORWOOD, over plaintiff's objection, informed MMCC and the construction persons that they could enter plaintiff's apartment.

23. Plaintiff was frightened and intimidated. Although she certainly didn't want anyone coming into her home, she was overwhelmed with the fear of being arrested. Plaintiff watched in fear, humiliation, embarrassment, anxiety and sadness as, pursuant to defendant Sgt. NORWOOD's instructions, the MMCC and construction persons streamed into her apartment. Once they were inside, MMCC and construction

personnel began moving and removing items from plaintiff's kitchen and commencing construction work. Defendant Sgt. NORWOOD then left from the location, telling plaintiff before she did that she would "be back if it were necessary." Plaintiff understood defendant Sgt. NORWOOD's statement to her as an order that she let the MMCC and construction personnel do anything they wanted for as long as they wanted, lest she be arrested.

24. MMCC and construction personnel remained inside plaintiff's apartment for several more hours moving her personal items and making alterations, including but not limited to removing her kitchen sink which resulted in large holes in her kitchen wall being left open to the outside.

25. A few months later, on February 1, 2018, Los Angeles Police Department officers made an unlawful entry into plaintiff's apartment against her will and over her objection. In the afternoon on February 1, 2018, defendant Los Angeles Police Department officers CARLOS MALDONADO, ROBERT MALDONADO, ALMA MARTINEZ, LUIS ACEVES and DOES, including a yet-to-be-identified DOE defendant Los Angeles Police Department Sergeant, broke the locks on plaintiff's apartment doors and entered. Plaintiff is informed and believes and thereon alleges that the named defendant Los Angeles Police Department officers and DOES contacted their supervisor, who happened to be defendant Sgt. NORWOOD, to confer before making entry to plaintiff's apartment. Plaintiff is further informed and believes and thereon alleges that defendant Sgt. NORWOOD, as she had before, approved their entry. But the defendants did not have any type of warrant, there was no emergency, and plaintiff certainly did not consent. As was the case on November 30, 2017, the defendant offices allowed and facilitated MMCC and construction personnel entering into plaintiff's apartment over plaintiff's objection and against her will. Plaintiff was extremely distressed to witness people streaming into her apartment and doing construction work which included, among other things, making the holes that had previously been made on November 1 in her kitchen wall even larger.

26. Plaintiff wanted to leave, but wasn't permitted to. Standing next to her as she witnessed the defendants and others entering into her apartment and beginning construction work was the DOE-defendant Los Angeles Police Department Sergeant mentioned above. He ordered her to remain with him for the entire time (approximately four (4) hours) that the defendants and DOES, MMCC and construction personnel remained inside plaintiff's apartment. Plaintiff had done nothing illegal and there was no lawful basis to seize and detain her. Nevertheless, plaintiff was not free to leave, and definitely didn't feel free to leave – particularly given the DOE-defendant Los Angeles Police Department Sergeant's order to her to remain there and the presence of the other defendant law enforcement officers.

27. The law enforcement defendants and DOES conducted the above-described unlawful February 1, 2018 entry into, search and seizure, and occupation of plaintiff's apartment in an unnecessarily and unreasonably public manner so that plaintiff's neighbors, among others, could easily witness it. That caused plaintiff added humiliation and embarrassment.

28. Defendants and DOES' facilitated and caused unlawful and unauthorized entries into and occupations of plaintiff's apartment against her will and over her objections on November 30, 2017 and on February 1, 2018, and their seizure of her on February 1, 2018, were in violation of plaintiff's rights, including but not limited to her rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

29. Defendants and DOES' unlawful conduct described above caused plaintiff to suffer enormous humiliation, embarrassment, fear, anxiety, emotional distress, and plaintiff alleges the stress from the noted events even manifested in her suffering medical problems.

30. Plaintiff timely filed claims against defendants and DOES under California Government Code § 910.

///

**FIRST CAUSE OF ACTION**

(Violation of Civil Rights: Unlawful and Unreasonable Search and Seizure on behalf of plaintiff as against all defendants and DOES 1-10)

(4th and 14th Amendments/42 U.S.C. § 1983)

31. Plaintiff realleges and incorporates paragraphs 1-29.

32. By doing the acts described in paragraphs 8-29, all defendants and DOES are alleged to have caused and/or permitted the violation of plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, thereby entitling plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

33. Based on the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), it is alleged that defendant CITY OF LOS ANGELES and DOES are liable for all the damages caused to and injuries sustained by plaintiff as a result of the conduct of any and all of the individual defendant officers and DOES. Plaintiff is informed and believes and thereon alleges that defendant Sgt. NORWOOD is a supervisor within the Los Angeles Police Department and thereby sets an example to and directs other lower-level officers. Plaintiff is further informed and believes and thereon alleges that none of the defendant officers, including in particular Sgt. NORWOOD, were disciplined or sanctioned or, for that matter, even informed by the CITY OF LOS ANGELES or its Police Department that any of their conduct described herein was in violation of CITY policy or practice. Rather, plaintiff is informed and believes and thereon alleges that the CITY OF LOS ANGELES and its Police Department accepted and condoned all of the defendant officers' conduct described herein, and in particular, that of defendant Sgt. NORWOOD. Plaintiff is informed and believes and thereon alleges that, by allowing and condoning the acts, or fostering an atmosphere wherein the acts described above in paragraphs 8-29 are accepted and tolerated, defendant CITY OF LOS ANGELES and DOES are alleged to have facilitated, maintained or permitted an official policy or custom of permitting, with deliberate indifference, the occurrence of the types of wrongs set forth herein

above. Among defendant CITY OF LOS ANGELES and DOES other wrongful policies and practices, it is alleged to permit unreasonable searches and seizures like the ones described in this complaint by failing to adequately and properly monitor and investigate allegations of police officer misconduct, and properly and adequately discipline officers found, or who should have been found, to have committed misconduct, thereby expressly or implicitly messaging to law enforcement personnel that conduct such as described herein is acceptable and within CITY OF LOS ANGELES policy and/or practice. Plaintiff, in sum, is informed and believes and thereon alleges that the defendant officers' conduct as described herein was pursuant to and in conformity with CITY OF LOS ANGELES' policy and practice. See *Lee v. City of Los Angeles*, 250 F.3d 668, 682–83 (9th Cir. 2001) citing and quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (*Monell* policy or practice claim filed under 42 U.S.C. § 1983 will withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.")

## SECOND CAUSE OF ACTION

(Negligence & Negligent Infliction of Emotional Distress under California Law on behalf of plaintiff as against all defendants and DOES 1-10)

34. Plaintiff realleges and incorporates paragraphs 1-30. Plaintiff further alleges that the individual defendant law enforcement officers and DOES owed plaintiff at least two clear and specific duties under controlling law: (1) to act with reasonable care with respect to any of their interactions with her and (2) to respect her rights secured by the United States and California Constitutions and not to violate them.

35. By doing the acts described in paragraphs 8-29, plaintiff alleges that all defendants and DOES' acts or omissions were negligent as to plaintiff, in violation of defendants and DOES' duties to act with reasonable care towards plaintiff and to respect plaintiff's rights under the United States and California Constitutions and not violate them, and by such acts and/or omissions caused and inflicted severe emotional

distress upon plaintiff. The named defendant law enforcement officers and DOES had the responsibility to protect and serve plaintiff, but were instead violating her rights, leading, facilitating, and participating in the unlawful intrusion into her home – an area universally recognized as most sacred and protected.

36. Based on the California common law and codified principles of negligence and the tort of negligent infliction of emotional distress, defendant CITY OF LOS ANGELES and DOES are liable for damages caused to plaintiff by the individual defendants and DOES for the reasons set forth in paragraph 33 as well as vicariously liable under California law (California Government Code § 815.2).

## PRAYER FOR RELIEF

Based on the foregoing, plaintiff TAMU BLACKWELL demands a jury trial and requests damages as follows:

1. Compensatory damages, including general and special damages, according to proof;
2. Punitive damages according to proof, except as against defendant City of Los Angeles;
3. Authorized costs, interest, attorney fees; and
4. Any additional just and proper relief.

Dated: December 22, 2020

By_____
Tamu Blackwell
**PLAINTIFF IN PRO SE**

**FROM:**
James Blackwell
355 South Grand Ave
Suite 2450
Los Angeles, CA 90071
c/o Familyworks

**TO:**
Hon. Gail J. Standish, United States
Magistrate Judge
Edward R. Roybal Federal Building
And United States Courthouse
255 E. Temple Street
Los Angeles, CA 90012-3332
ATTN: Ms. E. Carson

RECEIVED
CLERK, U.S. DISTRICT COURT
DEC 24 2020
DISTRICT OF CALIFORNIA

US POSTAGE PAID
$7.75
Origin: 90018
12/22/20
0545510019-13

PRIORITY MAIL 1-DAY®
0 Lb 7.80 Oz
1006
EXPECTED DELIVERY DAY: 12/23/20
C032

SHIP TO:
255 E TEMPLE ST
Los Angeles CA 90012-3332

USPS TRACKING® NUMBER
9505 5144 9528 0357 5155 80





